# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| KEANNA GOCHET, Individually and on Behalf of All Others Similarly Situated, | Case No.: 18-cv-1257 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| SOURCE RECEIVABLES MANAGEMENT LLC, | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Keanna Gochet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Source Receivables Management, LLC ("SRM") is a foreign limited liability company with its principal offices located at 4615 Dundas Drive, Suite 102, Greensboro, North Carolina 27407.

6. SRM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. SRM is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. SRM is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or around February 9, 2018, SRM mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "SPRINT." A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

13. Exhibit A contains the following account information:



2

14. <u>Exhibit A</u> also contains the following "options" to settle or resolve the debt:

> SPRINT has placed your account with Source Receivables Management to recover the Amount Due referenced in this letter. There are multiple options available to you.
>
> ① **Single Payment Settlement Option:**
> Take $1311.40 off the balance. Pay $1,311.40 no later than 03/24/18. Your account will be considered "Settled in Full" after we post your payment.
>
> ② **3 Monthly Payment Plan:**
> Take $1049.12 off the balance. Pay over 3 equal monthly installments of $524.56. First payment due no later than 03/24/18. Your account will be considered "Settled in Full" after we post your final payment.
>
> ③ **Balance in full Payment Plan:**
> Pay as little as $100.00 per month. First payment due no later than 03/24/18. Your account will be considered "Paid in Full" once the account reaches a zero balance.

<u>Exhibit A</u>.

15. <u>Exhibit A</u> further states:

> Payment of the offered settlement amount will stop collection activity on this matter. We will inform Sprint once the payment(s) is/are posted. Payment of the settlement amount will not restore your service with Sprint. If you wish to re-establish service with Sprint at a future date, Sprint may require partial or full payment of your remaining balance at that time, according to Sprint's credit policy.

<u>Exhibit A</u>.

16. Options (1) and (2) in <u>Exhibit A</u> purport to offer to settle the account for approximately 50% of the balance and 60% of the balance, respectively, but, on its face, <u>Exhibit A</u> is confusing and misleading as to whether payment according to the schedules in Options (1) and (2) would actually settle the debt.

17. The normal meaning of "settling" a debt is that the debt is permanently resolved in exchange for a payment of a portion of the alleged balance.

18. <u>Exhibit A</u> informs the consumer that "your account will be considered 'Settled in Full' after we post your payment," indicating that the payment would settle the debt.

19. However, <u>Exhibit A</u> also further informs the consumer that "If you wish to re-establish service with Sprint at a future date, Sprint may require partial or full payment of your

3

remaining balance at that time, according to Sprint's credit policy," indicating that payment would not actually settle the debt.

20. The statements taken together are contradictory and inherently false, deceptive, misleading, and confusing. Assuming the payment would actually "settle" the account, there would be no "remaining balance" that Sprint could require Plaintiff to pay to re-establish service. If there is a "remaining balance" that Plaintiff still owed Sprint, the account would not actually be "settled."

21. Further, the representation that paying the settlement amount "will stop collection activity on this matter" inherently contradicts the representation that Sprint may require a consumer who wishes "to re-establish service with Sprint at a future date" to pay "your remaining balance at that time," because refusing to establish a consumer's service pending payment of the "remaining balance" is inherently a form of collection activity. Exhibit A.

22. Moreover, Exhibit A also contains the following:

> Please note that a negative credit bureau record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. This in no way affects any rights you may have.

Exhibit A.

23. On the face of Exhibit A, it is impossible to determine whether SRM, or the creditor, could, or would, continue to report the "settled" debt to consumer reporting agencies. *E.g., Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d 870, 876-77 (N.D. Ind. Jan. 17, 2017).

24. The consequences of misleading a consumer with respect to settling a debt are greater than misleading the consumer about the amount of the debt. In this circumstance, the consumer could make the "settlement" payment but Sprint may still report the account as unpaid. Such reporting would have a more negative effect on the consumer's creditworthiness (as measured by "credit scores") than payment in full or a true settlement in which a zero balance is all that remains.

4

25. Whether a payment would actually settle the debt is, by definition, a material term of a settlement offer and must be communicated clearly and effectively. *E.g., Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) ("Requiring a clear statement of the settlement proposal, including the method by which the settlement amount is calculated, will not interfere with the debt collector's freedom to negotiate."); *Al v. Van Ru Credit Corp.*, 2018 U.S. Dist. LEXIS 70321, at *7-8 (E.D. Wis. Apr. 26, 2018) (in the context of settlement offers, "ambiguity itself can prove a violation.") (quoting *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686-87 (7th Cir. 2017)); *see also, Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13 (W.D. Okla. Mar. 30, 2017) (collection letter violated the FDCPA because "[a]ny consumer receiving the first letter would be left to wonder about a material term of the offer[.]"); *Dixon v. Law Office of J. Scott Watson P.C.*, 2018 U.S. Dist. LEXIS 18184, at *10-11 (E.D. Penn. Feb. 5, 2018) (settlement offer that specified initial installment amounts but left open the amount of later installments potentially violated the FDCPA), *cross motions for summary judgment denied by, Dixon v. Scott*, 2018 U.S. Dist. LEXIS 133076.

26. Plaintiff was deceived, misled, and confused by <u>Exhibit A</u>.

27. The unsophisticated consumer would be deceived, misled, and confused by <u>Exhibit A</u>.

28. Plaintiff had to spend time and money investigating <u>Exhibit A</u>, and the consequences of any potential responses to <u>Exhibit A</u>.

29. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to obtain counsel on the consequences of <u>Exhibit A</u>.

*The FDCPA*

30. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016)

(same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

31. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

32. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the character, amount, or legal status of any debt."

34. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I - FDCPA

35. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

7

36. Exhibit A contains confusing and misleading representations about whether the offer to "resolve" the account would, in fact, settle the debt.

37. The confusion engendered by Exhibit A would intimidate the consumer and distract the consumer away from his validation rights.

38. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

## CLASS ALLEGATIONS

39. Plaintiff brings this action on behalf of a class consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the Complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) sent between August 14, 2017 and August 14, 2018, inclusive, (e) that was not returned by the postal service.

40. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

41. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Defendant complied with the FDCPA.

42. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

43. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

44. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

45. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: August 14, 2018

        **ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

9